**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SIRAJ A. ALI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2508 |
| | § | |
| LA MARQUE I.S.D. EDUCATION | § | |
| FOUNDATION, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case arises from the detention, arrest, and 13-day incarceration of the plaintiff, Siraj A. Ali, in May 2004. The charges were later dismissed. The arrest occurred after Mon L. White, an off-duty police officer hired by the Kroger Company to provide security at one of its stores, detained Ali after he left a Kroger parking lot. Ali has alleged state-law claims against Kroger and White for defamation, intentional infliction of emotions distress, false imprisonment, malicious prosecution, and assault and battery. Kroger has moved for summary judgment, asserting that it cannot be directly liable because there are no allegations or evidence of any Kroger action or inaction that caused the detention, arrest, or prosecution. Kroger also asserts that it cannot be vicariously liable for the actions of the off-duty police officer. (Docket Entry No. 53). The officer, Mon L. White, has also moved for summary judgment on the state and federal law claims against him. White asserts qualified immunity

and official immunity. (Docket Entry No. 55). Ali has not responded to either summary judgment motion.

For the reasons explained below, Kroger's motion for summary judgment is granted. White's motion for summary judgment is granted in part. The federal-law claims against him are dismissed with prejudice and the state-law claims are dismissed without prejudice to Ali's ability to pursue them in state court.

**I.   Background**

For the purpose of this motion, any disputes over the facts are resolved in Ali's favor and taken in the light most favorable to him. The record shows that on May 16, 2004, Mon L. White was working as a security guard at the Kroger store at Kirkwood and Bissonnet in Houston, Texas. (*See* Docket Entry No. 53, Ex. D). White was an off-duty LaMarque Independent School District Police Officer who had been hired by Kroger to provide store security. (*See id.*, Ex. D). On that date, Ali, with his wife and 13-year-old daughter, drove into the store parking lot. (*See id.*, Ex. A, 34:17–22, 39:11–23). Ali was driving a 1980 two-door vehicle. (*Id.*, Ex. B, 137:2–10). Ali dropped off his wife and daughter so they could withdraw cash from the ATM inside the store. (*Id.*, Ex. A, 34:17–22, 39:11–23). Ali drove around the parking lot and returned to pick them up. (*Id.*, Ex. A, 39:11–19; Ex. C, 16:21–25). Ali was sitting in the driver's seat with the windows rolled down, placing the money his wife had given him in his wallet, when White approached and said that Ali was in a fire lane. (Docket Entry No. 53, Ex. A, 39:16–19, 41:18–24). Ali denies that he was parked in a fire lane, but the defendants point out that the relevant City of Houston Fire Code

2

section prohibits not only parking in a fire lane, but also obstructing a fire lane. (*See id.* at 5 n.1 (citing HOUSTON, TEX., FIRE CODE § 503.4.1 (2000) (as amended))).

White asked for Ali's driver's license. Ali refused. (*Id.*, Ex. A, 120:14–22). Ali asserts that he did not know that White was a police officer as opposed to a security guard. (*See id.*, Ex. A, 49:1–5, 128:23–24). Ali then drove off and left the parking lot. (*Id.*, Ex. A, 42:1–7, 116:10–19). White pursued on foot and caught up to Ali's vehicle at the traffic light. Ali alleges that White reached into the driver's-side window to take the keys out of the ignition. White struggled with Ali and elbowed him in the upper body and face in trying to get the keys. (Docket Entry No. 53, Ex. A, 43:9–19, 123:10–22). Ali gave the keys to his wife. (*Id.*, Ex. A, 43:20–22). Ali asserts that White threatened to pull his gun and radioed the Houston Police Department ("HPD"), detaining Ali until the HPD officers arrived. (*See id.*, Ex. A, 43:21–44:2). During this period, according to Ali, White made derogatory or racially offensive comments. (*Id.*, Ex. A, 44:18–45:22).

HPD Officer B.W. Foltz ticketed Ali for parking in a fire lane and then, after conferring with White and the Harris County District Attorney's Office, arrested Ali. (*Id.*, Ex. A, 56:10–18; Ex. E). Foltz handcuffed Ali and took him to the jail, where he was charged with evading the lawful detention of a peace officer in a motor vehicle. (*Id.*, Ex. A, 57:12–18, 58:18–25; Ex. E; Ex. F). Ali was unable to post the $500 needed for release on bail and spent 13 days in jail before he could get the money. (Docket Entry No. 53, Ex. A, 59:9–13). The charge was dismissed. (Ex. F).

On May 13, 2005, Ali sued Kroger, Officer White, and other defendants who have since been dismissed. (Docket Entry No. 1). As to White, Ali alleges claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights against unreasonable seizure and the use of excessive force, and under 42 U.S.C. § 1981 for violations of his civil rights based on racial discrimination. (Docket Entry No. 13 at 7–16). Ali also asserts state-law claims against Kroger and White for defamation, intentional infliction of emotional distress, false imprisonment, malicious prosecution, and assault and battery. (*Id.* at 16–23).

Both Kroger and White have filed separate motions for summary judgment. Ali has filed no response.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof lies with the non-moving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) demonstrate that the evidence in the record insufficiently supports an essential element of the non-moving party's claim. *Celotex*, 477 U.S. at 330 (citations omitted). While the party moving for summary judgment must

demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 300 (5th Cir. 2004). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (internal citations omitted).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (citation omitted). "Rule 56(c) mandates the entry of summary judgment, after adequate time for

5

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.    Kroger's Motion for Summary Judgment

Kroger moves for summary judgment on three grounds: it cannot be held vicariously liable for White's actions because he was acting within his lawful authority and performing a public law enforcement duty while investigating a potential crime that he witnessed; it cannot be held vicariously liable because White was an independent contractor over whom Kroger neither possessed nor exercised any right of control in the performance of his duties as a security officer; and it cannot be vicariously liable for White's off-premises, investigatory detention of Ali because that action was unrelated to Kroger or the security duties for which White was hired.  Because this court grants summary judgment on the first two grounds, it does not reach the third ground.

Texas courts have examined when a company such as Kroger may be vicariously liable for allegedly tortious acts committed by an off-duty police officer working as a security guard.  To resolve the question, courts look to whether the police officer acted as the employee of a private employer or in an official capacity enforcing general laws pursuant to his public duty.  The courts "analyze the capacity in which the officer acted at the time he committed the acts for which the complaint is made." *Morgan v. City of Alvin*, 175 S.W.3d 408, 416 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citation omitted).  "If the officer is performing a public duty, such as the enforcement of general laws, the officer's private

6

employer incurs no vicarious responsibility for that officer's acts, even though the employer may have directed the activities." *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet) (citation omitted); *see also Larkin v. Johnson*, 44 S.W.3d 188, 189 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("[W]here an officer is performing a job incident to enforcing the public laws, he is acting in the course and scope of his employment as a police officer even if the private employer directed him to perform the duty."). "If the officer was engaged in protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the employer, . . . the trier of fact decides whether the officer was acting as a public officer or as a servant of the employer." *Mansfield*, 37 S.W.3d at 150 (citation omitted).

If the off-duty officer was acting as a police officer when the acts were committed, vicarious liability does not apply to the company that hired the officer as a security guard. *See Leake v. Half Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559, 563 (Tex. App.—Dallas 1996, no writ) (noting that an employer may be liable for an employee's actions under the doctrine of respondeat superior when an employee is acting within the scope of his employment). "If an off-duty officer observes a crime, as a matter of law, he becomes an on-duty officer for purposes of determining whether or not a private employer is vicariously liable for the officer's actions." *Morgan*, 175 S.W.3d at 417 (citing *Cherqui v. Westheimer Street Festival Corp.*, 116 S.W.3d 337, 344 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Mansfield*, 37 S.W.3d at 150; *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex. App.—Dallas 1994, no writ)). The officer's

performance of public duty also extends to detaining the arrested person after the arrest until he can be taken to the police station. *See Mansfield*, 37 S.W.3d at 150 (concluding employer cannot be vicariously liable, as a matter of law, for the acts of an off-duty police officer employed as a security guard who arrested and detained a third party until he could be removed to the police station).

The undisputed summary judgment evidence shows that White was performing his law-enforcement duty, not security duties for Kroger, when he stopped and detained Ali and caused Ali's arrest. (*See* Docket Entry No. 53, Ex. A, 41:23–24, 116:7–9, 120:5–7; Ex. D). The evidence shows that White's security duties for Kroger were maintaining a security presence inside the store and providing merchandise control, not policing the parking lot for traffic violators or investigating potential crimes off Kroger's premises. (*Id.*, Ex. D). Ali did not enter the Kroger store. (*See id.*, Ex. D). The event that caused the initial stop was Ali stopping his car in a fire lane. (*Id.*, Ex. A, 41:17–24). The event that caused the detention was Ali driving away from White after refusing a request to show his driver's license. (*See id.*, Ex. A, 42:1–4, 57:9–58:1; Ex. E). White detained Ali in the street, not on Kroger's premises. (*Id.*, Ex. E).

Under Texas law, White was performing his public duty as a police officer when the events at issue occurred, not enforcing a Kroger rule or regulation. Kroger cannot be vicariously liable for White's conduct as a police officer performing his public duty, even though the conduct occurred during the time that White was off-duty and working as a security guard.

Alternatively, Kroger cannot be vicariously liable for White's actions toward Ali because the summary judgment record shows that White was an independent contractor over whom Kroger had no right of control in the performance of his security guard duties. (Docket Entry No. 53, Ex. D). The Texas Supreme Court has held that the general rules in Texas governing the liability of an employer of an independent contractor for physical harm caused to another by an act or omission of the contractor apply to police officers working as security guards. In *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791–96 (Tex. 2006), the Texas Supreme Court refused to recognize an exception to the general rule for independent contractors hired to protect private property, based on the "personal character" of that activity. *Id.* The Court stated:

> We decline to recognize a personal character exception to the rule that an employer is generally insulated from liability for the tortious acts of its independent contractors. Instead, whether an employer can be liable for security work performed by an independent contractor is determined by the facts of the case analyzed under the control exception and the nondelegable duty exception, which includes inherently dangerous activities and statutorily-imposed duties. In this case the plaintiff could, and did, sue the nightclub alleging direct liability for negligent hiring. Therefore, we see no reason to expand an employer's liability for the acts of its independent contractor solely because the contractor is hired to perform security work, and we hold that there is no personal character exception to the general rule shielding an employer from liability for tortious acts of its independent contractors.
>
> We disapprove [of] *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.* and *Duran v. Furr's Supermarkets, Inc.* to the extent they hold that the personal character of security work can cause an employer to be liable for the actions of their independent contractors absent control over the details of their work.

9

*Id.* at 796.

In *Ramirez*, the Court held that a night club was not vicariously liable for actions of an off-duty peace officer who was working as an independent contractor to provide security at the night club because the club had no authority to control the manner in which he performed his job. *Id.* at 790, 792. In that case, the club ordered the officer to eject the plaintiff from the premises, resulting in an altercation in which the plaintiff was seriously injured and arrested but not indicted. *Id.* at 790. The court held that because the officer was an independent contractor, the club could not be held vicariously liable for the officer's conduct that injured the plaintiff. *Id.* at 791–92.

In the present case, as in *Ramirez*, Kroger did not have the authority to, and did not, control the method or manner in which White performed his duties as a security guard or the details of his work. In the present case, unlike *Ramirez*, Kroger did not give White any orders that related to Ali, making White's status as an independent contractor even more clear than in *Ramirez*. The record shows that, as a matter of law, White was an independent contractor and that Kroger cannot be vicariously liable for White's conduct.

Kroger's summary judgment motion is granted.

### IV.     White's Summary Judgment Motion

#### A.     Qualified Immunity

White moves for summary judgment as to Ali's claims under sections 1981 and 1983 on the basis of qualified immunity. (Docket Entry No. 55). Courts apply a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified

immunity. The first issue is whether the plaintiff has alleged a constitutional violation. *See, e.g.*, *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citation omitted); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (citation omitted). If not, the analysis ends. If so, the court must consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See, e.g.*, *Tarver*, 410 F.3d at 750 (citation omitted); *Glenn*, 242 F.3d at 312 (citation omitted). To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312 (citation omitted); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (citation omitted); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.") (citation omitted).

Ali alleges that his constitutional rights were violated when he was unlawfully detained. Ali argues that the officers lacked either probable cause to arrest him or reasonable suspicion to detain him. (Docket Entry No. 13 at 9). White contends that his conduct was lawful and that, even if it violated Ali's rights, it was objectively reasonable. The record shows that Ali cannot satisfy the second prong of the qualified immunity analysis because detaining and arresting Ali was not objectively unreasonable in light of the circumstances surrounding the incident. A police officer who reasonably but mistakenly concludes that he

11

has a reasonable basis to detain and probable cause to arrest a suspect is entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991).

The evidence shows that White witnessed Ali stop his car so as to obstruct a fire lane. (*See* Docket Entry No. 55, Ex. A, 40:22–41:11). White was wearing what Ali described as a security guard uniform. Although Ali denied knowing that White was a police officer, he admitted that nothing on the uniform stated "security guard." (*See id.*, Ex. A, 49:1–14, 110:16–19). Other evidence in the record shows that White wore his police uniform. (*See* Docket Entry No. 53, Ex. D ("During his shift, Officer White wore a LaMarque Independent School District police officer's uniform and badge and carried a firearm.")). Ali refused White's request to produce a driver's license and instead drove away. (*See* Docket Entry No. 55, Ex. A, 42:1–7). Texas law makes it an offense to evade an attempted lawful detention by a peace officer. While facts concerning the incident are in dispute, none is material to determining that White reasonably believed that Ali had committed or was committing an offense. *See Goodson*, 202 F.3d at 740 (citation omitted) (defining probable cause, which is based on the totality of the facts and circumstances).

Ali also alleges that he was subjected to excessive force. To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was objectively unreasonable. *See Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994) (per curiam). The only use of force that Ali testified to was that as he was sitting in traffic, after driving away from White, White came up to the driver's window, reached in to get Ali's

12

keys, and struck Ali with his elbow as he was trying to get the keys. (*See* Docket Entry No. 55, Ex. A, 43:9–19, 123:10–22). Ali grabbed the keys, handed them to his wife, and White pulled his gun. (*Id.*, Ex. A, 43:21–22). White, Ali, and the members of Ali's family just waited for the next 30 minutes, during which time White made abusive comments to Ali. (*Id.*, Ex. A, 43:24–45:22).

The summary judgment record does not show any but *de minimis* injury. Based on Ali's own testimony describing the officer's conduct and his *de minimis* injuries, he cannot as a matter of law establish that he was subjected to excessive force.

White's motion for summary judgment on the federal claims is granted.

### B. The State-Law Claims

White moves for summary judgment as to Ali's state-law claims against White on the basis of section 101.106 of the Texas Civil Practice and Remedies Code. (Docket Entry No. 55 at 16–17). This section states that "[t]he filing of a suit under this chapter against a government unit constitutes an irrevocable election by plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a) (Vernon 2005). Because Ali sued both the government unit and the individual officer, White argues, the lawsuit against the individual officer is barred.

Subsection (b) of section 101.106 states the converse of subsection (a): suing an employee constitutes an irrevocable election and bars suit against the governmental unit. *See id.* at § 101.106(b). Subsection (e) states that if both the employees and the governmental

13

unit are sued, "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* at § 101.106(e). In a recent Fifth Circuit case, the court rejected White's proffered reading of the Texas Code provision. In *Ibarra v. Harris County Tex.*, No. 05-20259, 2007 WL 1879176, at *5–6 (5th Cir. June 28, 2007) (not designated for publication), both Harris County and its employees were sued. The court looked to subsection (e) as controlling. *Id.* at *6. Because Harris County had never filed a motion to dismiss its employees, the defendant officers had no automatic right to dismissal. *Id.* "Subsection (e) does not explicitly prohibit suits against both employee and governmental unit." *Id.* (citing *Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex. 1997) ("judgment for school district rendered employee immune under § 101.106")). The court concluded that Harris County's presence in the case did not entitle the individual officers to immunity from the state-law claims. *Id.* Because Harris County had failed to file the appropriate motion, "the district court did not err in denying summary judgment on the basis of statutory immunity under the Texas Tort Claims Act." *Id.* Similarly, in the present case, the government unit was dismissed and has not moved to dismiss the claims against the employee. Summary judgment on this basis is denied.

Because this court has dismissed the federal claims against White with prejudice, it is within the court's discretion to dismiss the state-law claims without prejudice, to allow them to proceed in state court if Ali wishes to pursue them. A court may decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th

Cir. 1999) (citation omitted); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by amended statute*, 28 U.S.C. § 1447(c) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). In this case, the only claims that remain are state-law claims against White. They are dismissed without prejudice to Ali's ability to pursue them in state court.

**V.    Conclusion**

The claims against Kroger are dismissed with prejudice. The federal-law claims against White are dismissed with prejudice on the basis of qualified immunity. The state-law claims against White are dismissed without prejudice to Ali's ability to pursue them in state court.

SIGNED on November 27, 2007, at Houston, Texas.

                                             Lee H. Rosenthal
                                      United States District Judge